IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-CR-00260-M-1

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL KENNETH COX,<br>CHRISTOPHER C. WORTH,<br><br>    Defendants. | ORDER |

This matter comes before the court on Defendant Michael Cox's motion seeking (1) review of his detention order and (2) pretrial release under certain conditions [DE 34]. Defendant seeks this court's de novo review of a detention order issued by the Honorable James E. Gates on September 6, 2023. DE 28. The United States responded to the motion. DE 36. The court set a hearing on the motion, DE 35, which occurred on October 3, 2023, DE 38.[1] For the reasons stated herein, the motion is DENIED, and the court finds that no condition or combination of conditions would reasonably assure the safety of any other person and the community if Defendant were released. *See* 18 U.S.C. § 3142(e)(1).[2] This order memorializes the court's ruling from the bench. *See* 18 U.S.C. § 3142(i)(1).[3]

---

[1] At that hearing, both parties presented testimony and argument, which the court considered for purposes of this order. The court also considered the audio recording and transcript from Defendant's prior detention hearing before Judge Gates, exhibits submitted during that prior hearing, and the parties' briefs.

[2] The court makes no finding as to whether any condition or combination of conditions would reasonably assure Defendant's appearance. The risk of danger to the community "is sufficient [to support Defendant's detention]; both [risk of danger and risk of nonappearance] are not required." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).

[3] To the extent not expressly included in this order, the court further incorporates by reference its oral findings of fact and conclusions of law from the hearing.

1

A defendant ordered detained by a United States Magistrate Judge may, by motion, seek amendment or revocation of his detention order. 18 U.S.C. § 3145(b). On such a motion, the court conducts a de novo review of detention. *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1985). In that regard, the court "must make an independent determination of the proper pretrial detention or conditions of release." *Stewart*, 19 F. App'x at 48.

"The Bail Reform Act of 1984 provides a federal court with two choices when dealing with a criminal defendant who has been charged with an offense and is awaiting trial." *Reno v. Koray*, 515 U.S. 50, 57 (1995) (internal quotation marks omitted). "The court may either (1) release the defendant on bail or (2) order him detained without bail." *Id.* (internal quotation marks omitted). The court must detain a defendant if it "finds that no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

Certain offenses provide a statutory presumption of detention, including those involving "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A); *see also* DE 1 at 42 (charging Defendant with such an offense). Where a defendant rebuts that statutory presumption, the government bears the burden of showing by clear and convincing evidence that available conditions of release would not reasonably assure the safety of the community. *See United States v. Salerno*, 481 U.S. 739, 751 (1987). Even after that rebuttal, though, the presumption "remains a factor to be considered among those weighed by the district court." *United States v. Jaramillo*, No. 1:10-CR-426-2, 2010 WL 11504275, at *2 (M.D.N.C. Dec. 17, 2010) (collecting cases). Other factors that the court must consider include "the nature and circumstances of the offense charged," including whether the offense involves "a controlled substance," "the weight of the evidence," "the history and

2

characteristics of the [defendant]," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1) – (4).

The court finds (as announced at the hearing) that Defendant rebutted the statutory presumption of detention by proffering a third-party custodian to monitor his release. The burden therefore shifted to the United States. The United States met its burden (by clear and convincing evidence) by presenting the testimony of Federal Bureau of Investigation ("FBI") Agent Caleb Job.

Agent Job's testimony[4] indicated that Defendant developed relationships with two known drug traffickers during his tenure as head of the drug unit for the Wayne County Sheriff's Office. There was evidence that Defendant's relationships with these two individuals (referred to in the indictment as Drug Trafficker One ("DT1") and Drug Trafficker Two ("DT2")) violated protocols for dealing with confidential informants ("CI's") and significantly exceeded the scope of a law enforcement officer and CI relationship. Specifically, the evidence included that:

   a) Defendant would refer to DT1 and DT2 as "his CI's," even though no documentation evidenced such a relationship;

   b) Defendant apprehended DT2 with a quantity of cocaine on his person, and then told DT2 that he "worked for [Defendant] now";

   c) Defendant provided information to DT2 regarding a residence that potentially contained a large sum of drug proceeds. Days later, a violent home invasion occurred at that residence, during which several people (including minors) were injured, and Defendant did not inform investigating officers that he had provided the address of the residence to DT2 days before the home invasion;

---

[4] As noted, the court also considered the testimony of a different FBI agent from the prior detention hearing before Judge Gates.

3

d) Defendant created a fictitious paper trail for a purchase of cocaine by DT2, due to the fact that officers with the United States Drug Enforcement Administration ("DEA") had surveilled the purchase, such that DT2 avoided apprehension for what was not a true controlled purchase of narcotics;

e) Defendant facilitated a cocaine transaction between DT1 and DT2;[5]

f) After DT1 was seen on surveillance video entering a house with a gun, then leaving the house, followed shortly thereafter by an individual with an apparent gunshot wound, Defendant informed investigating officers that DT1 was holding a "BB gun";

g) Defendant would inform DT1 of police operations targeting DT1's drug trafficking business;

h) A CI reported being shot by DT2. Defendant then provided an alibi for DT2 by informing investigating officers that DT2 had been "facetiming" with Defendant on the evening of the shooting;

i) Defendant invited DT2 to a barbecue at his home, and at that gathering introduced him to a criminal defense attorney who could represent him for any charges stemming from the shooting of the CI;

j) DT2, on Defendant's behalf, sought to intimidate a male high school student with whom Defendant's daughter had reported relationship problems; and

---

[5] This evidence relates to Count One of the Indictment. *See* DE 1 at 42. As a result, the court finds that the offense charged is serious, in that it involves a controlled substance. 18 U.S.C. § 3142(g)(1); *see also United States v. Caro*, 597 F.3d 608, 624 (4th Cir.2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Peterson*, Nos. 95–5407, 95–5449, 95–5518, 95–5519, 210 F.3d 363 (table), 2000 WL 305137, at *13 (4th Cir. Mar. 24, 2000) (unpublished) ("Drug trafficking is an extremely serious crime with far-reaching effects."); *United States v. Williams*, 753 F.2d 329, 333–35 & n. 13 (4th Cir.1985) (reversing release order and recognizing that drug-dealing constitutes a danger to the community).

4

k) After DT1 found a GPS tracking device on his vehicle and told Defendant about it, Defendant made some inquiry and later related to DTI that the tracker was likely placed there by the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

In addition, the United States presented evidence that Defendant regularly procured Percocet painkillers from DT1, who would deliver them to the mailbox outside of Defendant's home. Further, the United States presented evidence that Defendant concealed the full extent of his relationships with DT1 and DT2 from investigators with both the ATF and the FBI. Finally, the United States presented evidence that Defendant maintains contacts with the Wayne County Sheriff's Office and has been able to procure sensitive information from that office, even years after his retirement in November 2018.

In weighing this evidence, the court has considered (as Defendant argued) that certain of the evidence is uncorroborated testimony from "two long-term drug dealers." DE 34 at 6. But material components of the United States' evidence are corroborated by forensic evidence in the record, including text messages, video surveillance, and recorded phone conversations. Other evidence was provided independently by multiple sources, providing further corroboration. Altogether, the court finds that "the weight of the evidence against [Defendant]" is substantial. 18 U.S.C. § 3142(g)(2).

The court has also considered Defendant's argument that, since learning he was subject to federal investigation in 2021, he "ha[s] not attempted to interfere with such investigation, and [h]as otherwise liv[ed] as a law abiding-citizen." DE 34 at 1; *see also id.* at 3 (noting Defendant "did not attempt to interfere or otherwise thwart steps taken in furtherance of the [federal] investigation"), 6-7 (asserting that Defendant, since learning of the federal investigation, "did not

5

engage in any illegal activity, did not flee his home, and did not attempt to influence witnesses"), 8 (contending Defendant "has remained in his community while working and caring for his family"). The court credits this argument but views it in the context of a multiyear course of conduct, during which there were multiple allegations (and the United States presented evidence supporting) that Defendant impeded, interfered with, or otherwise withheld information during investigations of DT1 and DT2, dangerous and violent known drug traffickers. There was also evidence presented at the hearing that Defendant (without an apparent law enforcement purpose or objective) furnished information to DT1 and DT2 that placed others at serious risk of harm. This finding weighs heavily in the court's consideration of "the history and characteristics of [Defendant]" and the "nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(3) – (4).

Finally, the court has considered Defendant's argument during the hearing that different law enforcement officers take different approaches to maintaining relationships with CI's. No doubt a true statement, but evidence presented during the hearing undermined the contention that Defendant's relationship with DT1 and DT2 was purely professional. This evidence included voluminous text messages (including those for procurement of controlled substances) and the fact that Defendant's relationship with DT1 and DT2 survived Defendant's retirement from the Wayne County Sheriff's Office.

In sum, the court finds that the United States has shown, by clear and convincing evidence, that Defendant's release would pose a risk of danger to the community, and further that no available conditions or combination of conditions reasonably address that risk. Accordingly, the motion is DENIED, and Defendant is ordered detained pending trial. Pursuant to 18 U.S.C. § 3142(i)(2) – (4), Defendant is hereby committed to the custody of the Attorney General or his

6

designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED this 5th day of October, 2023.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE